UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DONALD WAYNE EASTMAN, | ) |
| --- | --- |
| Plaintiff | ) |
| v. | ) CAUSE NO. 3:15-CV-585 RLM-MGG |
| BIOMET, INC., *et al.*, | ) |
| Defendants | ) |

OPINION and ORDER

After their attorneys agreed on resolution of Donald Eastman's claim against Biomet, Inc., Biomet sent Mr. Eastman a release to sign. Mr. Eastman signed the release after secretly modifying it so that the release no longer was designed to exempt Biomet from further claims by Mr. Eastman. Mr. Eastman sent the signed paper back to Biomet and received a check. Mr. Eastman cashed the check and retains the money, but now claims Biomet owes him more. Mr. Eastman and Biomet both have moved for summary judgment, and I will grant Biomet's motion because neither the law nor the facts support Mr. Eastman's claim.

I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

II. BACKGROUND

The Judicial Panel on Multidistrict Litigation established this MDL docket for claims in which plaintiffs claim personal injuries from a metal-on-metal

artificial hip that Biomet manufactured and placed into the stream of commerce. In January 2014, Biomet and Plaintiffs' Executive Committee entered into a Master Settlement Agreement. The Master Settlement Agreement provides a procedure for categorizing case values and resolving disputes between individual plaintiffs and Biomet over the settlement payment an individual plaintiff is entitled to receive.

In April 2014, Donald Eastman filed a complaint against Biomet, asserting that his Biomet M2a-38 hip replacement device was defective. <u>Eastman v. Biomet, Inc., et al</u>, Case No. 3:14-cv-00771-RLM-CAN. Mr. Eastman and Biomet agreed to settle that suit, and in February 2015, Mr. Eastman signed a confidential release of all claims confirming the agreement and fully and completely releasing all claims against Biomet.

The release says Mr. Eastman "shall receive the sum of $25,000.00." The release also included Mr. Eastman's acknowledgment that the $25,000 "shall constitute the full compensation which will ever be paid to [Mr. Eastman] by [Biomet]." After Mr. Eastman executed the release, Biomet paid him $25,000. Mr. Eastman admits that payment was deposited into the trust account of Mr. Singleton, Mr. Eastman's counsel of record in that suit. The parties filed a stipulation of dismissal signed by Mr. Singleton [Doc. No. 59], and I ordered dismissal with prejudice [Doc. No. 60].

Mr. Eastman now says he "conditionally signed" the release that Biomet drafted, asserting that it didn't "absolve Biomet from future claims on damages," and that Biomet is in breach by offering and awarding Eastman a settlement

much lower than the amount stipulated in paragraph 2 of the Master Settlement Agreement. Mr. Eastman made several changes to the signed release's terms before Mr. Singleton sent it to Biomet:

- he changed "irrevocable" to "revocable" in Paragraph 5;
- he changed "binding" to "nonbinding" in Paragraph 8j; and
- he changed "Indiana" to "Arkansas" in the choice of law provision.

Mr. Eastman says he made those changes to protect his right to sue Biomet in the future for breaching the Master Settlement Agreement. Biomet argues that the parties stipulated to dismissal without Mr. Eastman or his counsel telling it of any changes.

Two months after I dismissed the first suit, Mr. Eastman filed this case without an attorney in the western district of Arkansas, contending that Biomet breached the parties' settlement agreement by paying him only $25,000 rather than $200,000. The Judicial Panel on Multidistrict Litigation transferred the new case to the MDL, and in April 2016, I denied Mr. Eastman's motion for remand [Doc. No. 56]. In April 2017, I granted Biomet leave to file a motion for summary judgment [Doc. No. 104].

III. Discussion

A. Choice of law

Biomet argues in its cross-motion that Arkansas and Indiana law aren't in conflict as it relates to general rules of contract interpretation. Although Biomet's assertions are correct, Indiana law governs under the terms of the

Master Settlement Agreement, despite whether Mr. Eastman made any changes to the release. Paragraph 15 of the Master Settlement Agreement provides in part:

> (f) in case any provision, or any part of any provision, contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect . . .
> (g) the Parties agree that ***this Settlement Agreement shall be interpreted in accordance with the laws of the State of Indiana*** . . . .

[Doc. No. 1317-1] (emphasis added).

Mr. Eastman says he "reserved his right to sue for damages" under the Master Settlement Agreement, but attempted changes to the choice of law provision doesn't affect the terms of the Master Settlement Agreement. Indiana law governs, and no choice-of-law analysis is necessary.

### A. Breach of the Master Settlement Agreement

Mr. Eastman says Biomet breached the Master Settlement Agreement by offering and awarding him a settlement well below than the amount stipulated in paragraph 2 of the Master Settlement Agreement. Mr. Eastman argues that he "conditionally signed" and made a few changes to terms in the release to ensure he didn't "absolve Biomet from future claims on damages." So when Mr. Eastman replaced the word "irrevocable" with "revocable," he explains, the amended release became a counteroffer, demonstrating that Mr. Eastman didn't intend to waive his right to make future claims against Biomet under the Master Settlement Agreement.

Mr. Eastman argues that paragraph 2 of the Master Settlement Agreement bound Biomet to settle his claims for $200,000. Mr. Eastman says Biomet didn't have good cause to discount his settlement award. Paragraph 2 of the Master Settlement Agreement provides in relevant part:

> **Paragraph 2 Eligibility and Compensation** Plaintiffs who have received a Biomet M2a Magnum hip replacement system as part of an initial hip replacement that was revised more than 180 days after it was implanted shall receive a base award of $200,000.00 subject to any discounts as set forth in paragraph (b) below.

[Doc. No 1317].

Mr. Eastman says he is eligible for the base award of $200,000 because his revision surgery took place 1,652 days after the initial implant, and his eligibility isn't subject to any of the discounts or deductions of his base award. The Ouachita County Medical Center provided evidence of metallosis (or a "MoM injury") when it tested Mr. Eastman's blood and urine. This evidence, Eastman asserts, entitles him to the entire $200,000.

Paragraph 3(b) allows Biomet to reduce an award for "good cause," and provides in relevant part:

> 3. Mediation of Cases: The cases selected by Plaintiffs and Biomet for resolution pursuant to this paragraph will be referred to as the "mediation cases." Cases to be mediated are as follows:
>
> \*\*\*
> (b) Contested Cases. Biomet also believes that there is good cause to reduce the amounts to be paid on cases that qualify for payments, pursuant to Paragraph 2 of this Settlement Agreement. ***Good cause for Biomet to seek to reduce the amount to be paid to a specific plaintiff, include, but are not limited to, evidence of trauma, infection or other objective explanations for a premature failure of the hip***

> ***system with the absence of evidence of a MoM injury.*** By May 30, 2014, Biomet shall provide a list of its contested cases from all filed cases with materially completed fact sheets as of December 31, 2013. By September 19, 2014, Biomet shall provide a list of its contested cases from all filed cases with materially completed fact sheets served between January 1, 2014 and June 13, 2014.

[Doc. No. 1317] (emphasis added).

Mr. Eastman argues that Biomet reduced his settlement award in bad faith. He says Biomet cited an altercation between Mr. Eastman and a former employee as a factor in reaching its decision, yet there is no evidence the altercation caused any "trauma or premature failure" of Mr. Eastman's hip. Based on the circumstances, Mr. Eastman asserts that Biomet's "good cause" analysis creates a genuine issue as to whether Mr. Eastman is eligible to receive the full award under the Master Settlement Agreement.

Biomet asserts that its contract with Mr. Eastman is the release itself, not the Master Settlement Agreement. The Master Settlement Agreement lays out the parameters in which settlement negotiations must occur, not settlement terms that are universally binding upon Biomet. In another case in this docket, I explained the Master Settlement agreement's purpose: "the Master Settlement Agreement allows Biomet to seek a reduced award for any good cause, and gives examples of reasons Biomet might have. Nothing in the Master Settlement Agreement allows a plaintiff to use the presumed award as a floor while the plaintiff seeks an enhancement . . . ." <u>Hix v. Biomet, et al.</u>, 3:14-CV-619-RLM [Doc. No. 147]. The Master Settlement Agreement is merely a negotiation framework. "The Settlement Agreement explicitly allows the parties to disagree

about the categorization of a case and directs them to mediation when such a disagreement occurs." Id. at p.3. I also noted that "settlement is a matter between the parties, and there are no steps the court can take to settle a case without the parties' consent." Id. at p.4.

Biomet says the award reduction was made in good faith. In an email exchange, Biomet told Mr. Singleton that Mr. Eastman's March 18, 2014 operative report noted a post-revision diagnosis of "suspected" local tissue reaction from a metal-on-metal bearing surface with no indication of metallosis, pseudotumor, or any other metal-on metal findings. Biomet explained to Mr. Singleton that given its familiarity with Mr. Eastman's revision surgeon, Dr. Newbern, the absence of a definitive diagnosis of a metal-on-metal injury was significant to Biomet's reduced settlement valuation. Biomet also says the medical records indicated that Mr. Eastman had an "altercation" the day before the revision surgery and that he had been described as a "horrible patient." Biomet says that these factors account for Biomet's reduced settlement offer, and show that Biomet established "good cause" to lower the settlement award.

Lastly, Biomet argues the parties had a meeting of the minds to resolve Mr. Eastman's claims for $25,000. The release's terms were clear and unambiguous, explicitly mentioning that Mr. Eastman intended "to participate in the settlement resolution program as set forth in the [Master Settlement Agreement] that was approved by the MDL court on February 2, 2014." So, as Biomet sees it, Mr. Eastman can't rely upon the Master Settlement Agreement as a basis for a breach of contract claim at this stage of the proceedings. Mr.

Eastman changed three words in the contract, but he did so surreptitiously, and neither Mr. Eastman nor Mr. Singleton told Biomet of those changes. Biomet believes that this shows that it didn't knowingly and intentionally accept those changes. Despite the changes made, Biomet says, it negotiated in good faith and arrived at a binding, bargained-for, and final settlement that was memorialized in the release and supported by valid consideration.

No legal authority supports Mr. Eastman's arguments, those arguments are inconsistent with key provisions in the Master Settlement Agreement, and Mr. Eastman's conduct shows that he accepted the $25,000.

Paragraph 3 of the Master Settlement Agreement gave both Mr. Eastman and Biomet the right to dispute the base compensation amounts to which plaintiffs otherwise would be entitled to under paragraph 2, and required mediation in disputed cases. Paragraph 3(b) already has been quoted. Paragraph 3(c) provides in relevant part:

> Mediation Process. The cases selected by Plaintiffs and Biomet for resolution pursuant to this paragraph, ***will be mediated with the assistance of Thomas Rutter of ADR Solutions in Philadelphia,*** who will act as the mediator to work with the Parties to resolve any of the mediation cases, pursuant to this paragraph. Beginning in October 2014, the mediator will schedule, in consultation with the PEC and Biomet, firm-by-firm mediations to take place in Philadelphia. The Parties will confer in good faith, attempting to agree on values for all mediated cases. Any mediated case not resolved by [March 2, 2015], subject to the aggregate settlement percentage requirements set forth in Paragraph 5, will be remanded, pursuant to an appropriate order of the Court.

[Doc. No. 1317] (emphasis added).

Mr. Eastman's claim was subject to mediation because it falls within the

"contested cases" category. The Master Settlement Agreement gave Biomet the right to contest any case if it "believe[d] that there [was] good cause to reduce the amounts to be paid [under paragraph 2 of the Master Settlement Agreement]." Mr. Eastman contends that he is qualified for payments under paragraph 2 and that Biomet lacked good cause to reduce the amounts they were to be paid. But what constitutes "good cause" for purposes of this provision is subjective rather than objective, and isn't limited to the examples set out in paragraph 3(b). If Mr. Eastman disputed Biomet's reasons for seeking a reduction, his remedy under the Master Settlement Agreement was to proceed to mediation. Mr. Eastman chose not to do that. Instead, he changed a few words in the settlement agreement to "reserve" his right to sue under the Master Settlement Agreement. Although Mr. Eastman's signature was "conditional," he didn't contest the terms of the release before he received the money, nor did he return the $25,000 to Biomet.

As a result of his actions, Mr. Eastman impliedly consented to the Master Settlement agreement's terms, including the covenant not to sue in paragraph 11 of the Master Settlement Agreement. *See* Weldon v. Asset Acceptance, LLC, 896 N.E.2d 1181, 1187 (Ind. Ct. App. 2008) (holding that assent implied from conduct created a binding contract between both parties). As Biomet noted, "A party may not claim benefits under a transaction or instrument and, at the same time, repudiate its obligations." Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276, 283 (Ind. 1983) (citing Caito v. Indianapolis Produce Terminal, Inc., 162 Ind. App. 590, 596 (1974)). No genuine factual issue exists as to whether

Eastman was eligible to receive $200,000 under the Master Settlement Agreement.

### B. Duress and undue influence

Mr. Eastman argues that he signed the release with "under duress" and Biomet exerted undue influence and "strong arm tactics" that led him to sign a release that contravened the Master Settlement Agreement. These arguments are factually baseless and aren't supported by any legal authority.

### C. Motion to strike under fraud and/or sanctions

Mr. Eastman also seeks to strike Biomet's cross-motion for summary judgment on several grounds. First, Biomet engaged in "deception or fraud" when it sent Mr. Eastman a notice of the motion without attaching the actual copy of the motion. Mr. Eastman gives the court no reason to think the omission was fraudulent rather than a simple mistake by a litigant dealing with thousands of similar cases. Biomet mailed Mr. Eastman copies of the cross-motion immediately upon being notified of its mistake. Biomet didn't make a bad faith attempt to harass, gain unfair advantage or cause unreasonable delay, and I gave Mr. Eastman extra time to respond to Biomet's cross-motion [Doc. No. 119].

Mr. Eastman also asserts in his motion that Biomet engaged in "misconduct" for the same reasons Biomet is allegedly in breach of the Master Settlement Agreement—because Biomet didn't have "good cause" to support

Eastman's reduced settlement award. This argument falls short for the same reasons Mr. Eastman's summary judgment motion is being denied—Mr. Eastman didn't exercise his option to mediate before the settlement, and Mr. Eastman impliedly accepted the settlement with Biomet when he accepted and retained the reduced settlement award. Because Biomet didn't engage in any misconduct, no reason exists to strike its motion.

IV. Conclusion

Under the terms of the Master Settlement Agreement, Mr. Eastman had two options once Biomet made its offer to settle: mediate claim or proceed to trial on the merits. Mr. Eastman chose neither, and he can't create a reservation to sue under the very agreement from which he benefited when he accepted the settlement award. The court DENIES Mr. Eastman's motion for summary judgment [Doc. No. 107] and motions to strike and for sanctions [Doc. No. 116], and GRANTS Biomet's cross-motion for summary judgment [Doc. No. 110]. The clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED:  November 9, 2017

/s/Robert L. Miller, Jr.
Judge
United States District Court